Clement, J.
**319 At issue in this case is whether the rape-shield statute, MCL 750.520j, precludes the prosecutor from admitting evidence of a complainant's pregnancy, abortion, and lack of other sexual partners during a criminal-sexual-conduct prosecution. On interlocutory appeal, the Court of Appeals held that evidence of the complainant's lack of other sexual partners was not subject to the rape-shield statute and was otherwise admissible under the Michigan Rules of Evidence. As to evidence of the complainant's pregnancy and abortion, the Court held that this evidence fell under the purview of the rape-shield statute but was admissible pursuant to the statute's exception for evidence of the victim's past sexual conduct with the actor.
We agree that the entirety of the evidence offered is admissible but hold that none of the evidence falls within the scope of the rape-shield statute. Further, we hold that the entirety of the evidence is otherwise admissible under the Michigan Rules of Evidence. Therefore, we reject the reasoning of the Court of Appeals but affirm its disposition that the offered evidence is admissible.
**320 I. FACTUAL AND PROCEDURAL BACKGROUND
Defendant was charged with two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b, two counts of third-degree CSC, MCL 750.520d,[1] and one count of fourth-degree CSC, MCL 750.520e, based on allegations that he engaged in sexual penetration and conduct with the 14-year-old complainant, DM. Defendant was in a relationship with DM's mother through early 2015, and he fathered DM's two half-siblings. Defendant *508 did not reside with DM's mother and the three children during his relationship with DM's mother. According to DM's mother's preliminary-examination testimony, DM's mother was hospitalized from December 31, 2013 through January 5, 2014.[2] During this time, defendant stayed at DM's mother's apartment to care for the children. DM testified that while her mother was absent from the home, defendant "touched" DM "[e]verywhere." She elaborated that he touched her breasts with his mouth and penetrated her vagina with his penis. Upon further questioning, she answered that this was not the first or the only time she had sexual contact with defendant. She described another incident wherein the same actions occurred at defendant's home while her mother was sleeping in another room.
DM became pregnant. The prosecutor entered DM's medical records into evidence, and the records showed **321 that DM had a positive pregnancy test at Henry Ford Hospital on October 16, 2014, and an abortion at Planned Parenthood on November 17, 2014. DM's mother testified that DM initially refused to tell her mother with whom she had sexual contact. Eventually, in April 2015 and shortly after DM's mother and defendant ended their relationship, DM informed her mother that defendant had impregnated her. On the basis of this testimony, defendant was bound over to the circuit court.
The prosecutor subsequently filed a pretrial motion to admit evidence of (1) DM's pregnancy, (2) DM's abortion, and (3) DM's lack of other sexual partners through November 2014. The trial court granted the motion only as to evidence that DM became pregnant and ruled that the other evidence constituted character evidence inadmissible under MRE 404(a)(3).[3]
The prosecutor filed an interlocutory appeal, arguing that the entirety of the evidence was admissible under both MRE 404(a)(3) and the rape-shield statute, MCL 750.520j(1), which generally excludes "[e]vidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct **322 ...." Defendant responded and also cross-appealed the trial court's determination that evidence of DM's pregnancy was admissible, seeking a determination that MRE 404(a)(3) and the rape-shield statute excluded the entirety of the evidence.
In a published opinion, the Court of Appeals determined that all the evidence was admissible. People v. Sharpe , 319 Mich. App. 153, 173, 899 N.W.2d 787 (2017). As to the pregnancy and abortion evidence, the Court of Appeals held that MRE 404(a)(3) did not apply because MRE 404(a)(3) concerns the admissibility *509 of character evidence and, here, the prosecutor was not seeking to introduce evidence of the pregnancy and abortion in order to demonstrate that DM acted in conformity with that character. Id . at 164-165, 171, 899 N.W.2d 787. The Court then concluded that while evidence of DM's pregnancy and abortion was evidence of a specific instance of DM's sexual conduct that would typically be barred by the rape-shield statute, the evidence was admissible under the rape-shield statute's exception for evidence of the victim's past sexual conduct with the actor. Id . at 165, 171, 899 N.W.2d 787. The Court further held that the evidence satisfied the remaining requirements of the rape-shield statute because the evidence was material to a fact at issue-whether sexual penetration occurred-and because the probative value of the evidence outweighed its prejudicial nature. Id . at 166, 172-173, 899 N.W.2d 787. Unlike the trial court, the Court of Appeals did not view the abortion evidence to be so prejudicial that it outweighed its probative value. Id . at 172-173, 899 N.W.2d 787.
As to the evidence concerning DM's lack of other sexual partners, the Court of Appeals again concluded that the evidence did not fall under MRE 404(a)(3) because it was not introduced to demonstrate that DM acted in conformity with her lack of sexual partners.
**323 Id . at 168, 899 N.W.2d 787. It further held that the evidence was not barred under the rape-shield statute because the statute excludes specific instances of sexual conduct, not the lack of specific instances of sexual conduct. Id . However, it noted that even if the lack of sexual conduct could be construed as specific instances of sexual conduct, the evidence would be admissible under the rape-shield statute's exception for evidence showing the origin of pregnancy. Id . at 169, 899 N.W.2d 787. The Court then held that the evidence was otherwise admissible under MRE 402 and MRE 403 because the evidence was relevant to and probative of whether intercourse occurred between DM and defendant and because the evidence was minimally prejudicial. Id . at 169-170, 899 N.W.2d 787. Consistently with this ruling, the Court reversed in part and affirmed in part the trial court's ruling and remanded the case to the trial court for further proceedings. Id . at 174, 899 N.W.2d 787.
Defendant sought leave to appeal in this Court. We granted leave to consider the following issues: (1) whether evidence related to the complainant's pregnancy, abortion, and lack of other sexual partners was within the scope of the rape-shield statute, MCL 750.520j(1) ; (2) if so, whether the evidence was nonetheless admissible under one of the exceptions set forth in MCL 750.520j(1) ; and (3) if not, whether the evidence was admissible under general rules governing the admissibility of evidence, such as MRE 402 and MRE 403.[4]
II. LEGAL BACKGROUND
A. STANDARD OF REVIEW
This Court reviews a trial court's evidentiary decisions for an abuse of discretion.
**324 People v. Mardlin , 487 Mich. 609, 614, 790 N.W.2d 607 (2010). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. People v. Blackston , 481 Mich. 451, 460, 751 N.W.2d 408 (2008). To the extent that the trial court's evidentiary decision involves underlying questions of law, such as whether a statute precludes admissibility of evidence, this Court reviews those questions of law de novo.
*510 People v. Lukity , 460 Mich. 484, 488, 596 N.W.2d 607 (1999).
B. STATUTORY BACKGROUND OF THE RAPE-SHIELD STATUTE
Until the late twentieth century, Michigan courts considered evidence of a woman's sexual history legally relevant in rape prosecutions. People v. LaLone , 432 Mich. 103, 123-124, 437 N.W.2d 611 (1989) ( ARCHER, J. , concurring in part and dissenting in part). Allegations of rape were perceived as easily fabricated, and, accordingly, a woman's chastity-or lack thereof-was believed to be probative of whether she consented to the sexual act at issue. Id . ; id . at 124, 437 N.W.2d 611 n 14.[5] Unsurprisingly, this discouraged women from seeking prosecution of their assailants because they " 'fear[ed] that the trial proceedings would veer from an impartial examination of the accused's conduct on the date in question and instead take on aspects of an inquisition in which [the] complainant would be required to acknowledge and justify her sexual past.' " People v. Arenda , 416 Mich. 1, 9, 330 N.W.2d 814 (1982), quoting People v. Khan , 80 Mich. App. 605, 613, 264 N.W.2d 360 (1978).
**325 In 1974, after facing significant criticism of the state's rape laws, the Michigan Legislature passed several reforms that redefined unlawful sexual conduct and created new evidentiary standards for these prosecutions. LaLone , 432 Mich. at 124-125, 437 N.W.2d 611 ( ARCHER, J. , concurring in part and dissenting in part). Among these reforms was the rape-shield statute, MCL 750.520j. Id . MCL 750.520j serves to limit the admissibility of evidence of a complainant's sexual conduct and provides as follows:[6]
(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
(a) Evidence of the victim's past sexual conduct with the actor.
(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.
(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).
**326 The rape-shield statute "constitutes a legislative policy determination *511 that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant." People v. Morse , 231 Mich. App. 424, 429-430, 586 N.W.2d 555 (1998). The statute also reflects a belief that "inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury." Arenda , 416 Mich. at 10, 330 N.W.2d 814. Finally, the statute protects the privacy of the alleged victim and, in so doing, removes an institutional discouragement from seeking prosecution. Id . at 10-11, 330 N.W.2d 814 ; LaLone , 432 Mich. at 123-124, 437 N.W.2d 611 ( ARCHER, J. , concurring in part and dissenting in part). See also Michigan v. Lucas , 500 U.S. 145, 149-150, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) ("The Michigan statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy.").
III. ANALYSIS
In the present case, the prosecutor sought admission of evidence of DM's pregnancy and abortion and DM's lack of other sexual partners through November 2014. There are two different alleged procedural bars to the admission of the evidence proffered by the prosecutor: the rape-shield statute and the Michigan Rules of Evidence. We consider them each in turn.
A. APPLICABILITY OF THE RAPE-SHIELD STATUTE
When interpreting a statute, our primary goal is to ascertain and give effect to the Legislature's intent. People v. Gardner , 482 Mich. 41, 50, 753 N.W.2d 78 (2008). "If the statute's language is clear and unambiguous, we assume that the Legislature intended its **327 plain meaning and we enforce the statute as written." People v. Weeder , 469 Mich. 493, 497, 674 N.W.2d 372 (2004). In so doing, we assign each word and phrase its plain and ordinary meaning within the context of the statute. People v. Kowalski , 489 Mich. 488, 498, 803 N.W.2d 200 (2011) ; MCL 8.3a. We must also avoid any construction that would render any part of a statute surplusage or nugatory, if possible. People v. Rea , 500 Mich. 422, 428, 902 N.W.2d 362 (2017).
The rape-shield statute generally prohibits the admission of "[ (1) ] [e]vidence of specific instances of the victim's sexual conduct, [ (2) ] opinion evidence of the victim's sexual conduct, and [ (3) ] reputation evidence of the victim's sexual conduct...." MCL 750.520j(1). Although the statute was enacted in response to the practice of impeaching the complainant's testimony with evidence of the complainant's sexual conduct, the plain language of the statute does not limit the exclusion of such evidence upon whether the evidence is offered by the prosecutor or by the defendant.[7] The statute's latter two categories of exclusion are not relevant here because the evidence offered by the prosecutor in this case does not constitute opinion or reputation evidence. Specifically, the proffered evidence consists of medical records of DM's pregnancy and abortion, DM's mother's testimony that DM became pregnant and obtained an abortion, and DM's testimony that she had no other sexual partners through November 2014. The prosecutor has not sought to offer witness testimony commenting on DM's sexual reputation or any witness's opinion of DM's sexual conduct.
**328 *512 Remaining at issue is whether the offered evidence constitutes "[e]vidence of specific instances of the victim's sexual conduct." MCL 750.520j(1).[8] Because the rape-shield statute fails to define the term "specific instances," we may refer to a dictionary to help establish its plain meaning. See Rea , 500 Mich. at 428, 902 N.W.2d 362. As the term "specific instances" is not a term of art, we use a lay dictionary to aid with interpretation. See People v. Thompson , 477 Mich. 146, 151-152, 730 N.W.2d 708 (2007). Random House Webster's College Dictionary (2001) defines "instance" as "a case or occurrence of something" and defines "specific" as "specified, precise, or particular." Accordingly, a specific instance of the victim's sexual conduct must relate to a particular occurrence of the victim's sexual conduct.
Evidence of DM's pregnancy and her subsequent abortion are not evidence of a specific instance of the victim's sexual conduct. Although this evidence necessarily implies that sexual activity occurred that caused the pregnancy, the pregnancy and abortion are not evidence regarding a specific instance of sexual conduct. As we have previously stated, whether evidence falls within the purview of the rape-shield statute concerns whether the evidence "amount [s] to or reference [s] specific conduct," People v. Ivers , 459 Mich. 320, 329, 587 N.W.2d 10 (1998), not whether the evidence constitutes a consequence of or relates to sexual activity generally. In this case, the pregnancy and abortion evidence alone does not describe a particular or specific sexual encounter. The evidence demonstrates only that at least one act of sexual intercourse occurred in 2014 **329 and does not describe one particular occurrence of sexual conduct. Because DM's pregnancy and abortion are not evidence of a particular occurrence of sexual conduct, evidence thereof does not fall under the purview of the rape-shield statute, and the Court of Appeals erred in determining otherwise. See Kowalski , 489 Mich. at 498, 803 N.W.2d 200.
The conclusion that pregnancy and abortion are not themselves specific instances of the victim's sexual conduct is bolstered by a reading of MCL 750.520j as a whole. "[W]ords and phrases used in an act should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole," and "a word or phrase should be given meaning by its context or setting." Hannay v. Dep't of Transp , 497 Mich. 45, 57, 860 N.W.2d 67 (2014) (quotation marks and citation omitted; alteration in original). MCL 750.520j(1) explains that specific instances of the victim's sexual conduct shall not be admitted, but MCL 750.520j(1)(b) excepts relevant "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease." These specific instances of sexual conduct may be used to "show," or "cause or permit to be seen," Merriam-Webster's Collegiate Dictionary (11th ed), the "origin of semen, pregnancy, or disease." In so phrasing the statute, the Legislature has distinguished between the specific instance of sexual activity that shows the origin or the source of the semen, pregnancy, or disease-i.e., whatever sexual act led to these consequences-and the semen, pregnancy, or disease itself. Accordingly, the Legislature has ipso facto made clear that semen, pregnancy, or disease, while perhaps related to sex, are not themselves the specific instances of sexual conduct envisioned by MCL 750.520j. And because *513 pregnancy, and by extension abortion, is not a specific instance of **330 sexual conduct, neither pregnancy nor abortion falls within the rape-shield statute.
Similarly, evidence that DM did not engage in other sexual intercourse in 2014 does not fall within the plain language of the rape-shield statute. This evidence demonstrates an absence of conduct, not a "specific instance" of sexual conduct.[9] Excluding evidence of a lack of sexual partners under the rape-shield statute would render the phrase "specific instances" meaningless. See Rea , 500 Mich. at 428, 902 N.W.2d 362. We must give effect to all words in the statute, and, accordingly, the Court of Appeals properly determined that DM's lack of other sexual partners does not fall within the scope of the rape-shield statute.
Finally, we note that this conclusion is consistent with the purposes of the rape-shield statute. The rape-shield statute was designed to prevent unwelcome and unnecessary inquiry into a complainant's sexual activities, thereby protecting the complainant's privacy and protecting the complainant from suffering unfair prejudice based on her sexual history. See Arenda , 416 Mich. at 10, 330 N.W.2d 814. But here, the complainant has voluntarily offered evidence of her pregnancy, abortion, and lack of sexual history to bolster her allegations of criminal sexual conduct against defendant. There is no indication from our Legislature or in our caselaw that the rape-shield statute was designed to prevent a **331 complainant's disclosure of her own sexual history or its attendant consequences.[10] Accordingly, giving effect to the plain language of the statute and to the Legislature's intent in enacting the rape-shield statute, we hold that the entirety of the evidence offered here is not subject to the rape-shield statute. See Gardner , 482 Mich. at 50, 753 N.W.2d 78.
B. APPLICATION OF MRE 402 AND MRE 403
Because the offered evidence is not excluded under the rape-shield statute, we now analyze whether the evidence is otherwise admissible under the Michigan Rules of Evidence. Generally, relevant evidence is admissible. MRE 402 ; People v. Roper , 286 Mich. App. 77, 91, 777 N.W.2d 483 (2009). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice.
*514 MRE 403. The weighing of evidence's probative value against its prejudicial effect requires a balancing of several factors, including the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the **332 evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact. Blackston , 481 Mich. at 462, 751 N.W.2d 408.[11]
The offered evidence is relevant under MRE 402. Evidence of DM's pregnancy, abortion, and lack of other sexual partners makes it more probable that defendant sexually assaulted DM. Evidence showing that DM, a 14-year-old child, became pregnant is highly probative of the allegation that DM was sexually assaulted. See People v. Borowski , 330 Mich. 120, 126, 47 N.W.2d 42 (1951). It also provides context for DM's disclosure of the sexual assault: DM did not originally disclose the sexual assault but only did so after she discovered that she was pregnant and after repeated questioning by her mother regarding the identity of who impregnated DM. The evidence of DM's abortion corroborates that DM was impregnated and explains the lack of DNA evidence to identify the man who impregnated DM. Further, defendant's offering to pay for half of the cost of the abortion may demonstrate defendant's consciousness of guilt or desire to destroy evidence. To the extent that defendant presents alternative theories for why he paid for half of DM's abortion, we note that the standard for probative force is minimal, **333 People v. Crawford , 458 Mich. 376, 390, 582 N.W.2d 785 (1998), and that defendant may present any one of the reasonable alternative reasons for payment to the jury, who will then weigh this evidence. And finally, evidence demonstrating that DM had no sexual partners other than defendant through November 2014 is, by simple process of elimination, probative of the identity of the person who impregnated DM.
The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, and therefore, the evidence is not excluded under MRE 403. The evidence of DM's pregnancy and abortion definitively demonstrates that sexual penetration occurred. If the jury finds credible DM's testimony that she did not engage in sexual intercourse with anyone other than defendant through November 2014, that testimony proves that defendant was the man who sexually assaulted DM. Accordingly, this evidence is highly probative.
The danger of unfair prejudice created by the evidence does not substantially outweigh this high probative value. All relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations. See People v. Mills , 450 Mich. 61, 75-76, 537 N.W.2d 909 (1995). We agree with the Court of Appeals *515 that abortion evidence, while perhaps incendiary to some, is not so inherently prejudicial in today's society as to render it inadmissible. See State v. Stanton , 319 N.C. 180, 186, 353 S.E.2d 385 (1987) ("The mere fact that an abortion took place is not so inflammatory as to render it inadmissible."). Although there may be some danger of juror sympathy for a young woman who has gone through pregnancy and abortion or, alternatively, a danger of juror revulsion for a young woman choosing **334 abortion, the evidence here is both highly probative and concise. And to the extent that the abortion evidence could be viewed as cumulative of the evidence of DM's pregnancy, it also serves the purpose of explaining why the prosecutor is unable to offer DNA evidence to prove the identity of the man who impregnated DM. If the abortion evidence were not admitted, the jury might be left to speculate as to why DNA is unavailable and whether the pregnancy came to term.
As for the lack of sexual partners, Michigan courts have generally taken a dim view on this evidence. See People v. Stull , 127 Mich. App. 14, 18, 338 N.W.2d 403 (1983) ; People v. Bone , 230 Mich. App. 699, 702, 584 N.W.2d 760 (1998) ; People v. Khan , 80 Mich. App. 605, 621, 264 N.W.2d 360 (1978). But those cases involved efforts to use a victim's lack of sexual history to support arguments about the victim's credibility or, alternatively, about consent. In this case, the prosecution has concisely alleged a valid purpose: the lack of sexual partners eliminates the possibility that someone other than defendant impregnated DM. Moreover, at the time of trial, the trial court has the ability to provide a limiting instruction to the jury concerning the use of this evidence.
Given the high probative value of the evidence of DM's pregnancy, abortion, and lack of other sexual partners through November 2014, and its low danger of unfair prejudice, the evidence is admissible under MRE 402 and MRE 403.
IV. CONCLUSION
We hold that evidence of DM's pregnancy, abortion, and lack of other sexual partners through November 2014 does not fall under the rape-shield statute. Further, this evidence is otherwise admissible under **335 MRE 402 and MRE 403. We therefore affirm the result reached by the Court of Appeals-allowing the admission of this evidence-but we do so for the reasons stated in this opinion, and we remand this case to the trial court for further proceedings consistent with this opinion.
Brian K. Zahra, Bridget M. McCormack, David F. Viviano, Kurtis T. Wilder, JJ., concur.
Markman, C.J. (concurring ).
I agree with the majority that evidence of the complainant's pregnancy, abortion, and lack of other sexual partners is not subject to the rape-shield statute, MCL 750.520j, and is admissible under the Michigan Rules of Evidence. However, I reach the conclusion that evidence of the complainant's pregnancy and evidence of the abortion are not subject to the rape-shield statute for different reasons than the majority. In all other respects, I agree with the majority's conclusions and its reasoning.
The rape-shield statute, MCL 750.520j, provides, in pertinent part:
(1) Evidence of specific instances of the victim's sexual conduct , opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material *516 to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
(a) Evidence of the victim's past sexual conduct with the actor.[1 ]
**336 (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. [Emphasis added.]
The majority holds that "[e]vidence of DM's pregnancy and her subsequent abortion are not evidence of a specific instance of the victim's sexual conduct" because "[a]lthough this evidence necessarily implies that sexual activity occurred that caused the pregnancy, the pregnancy and abortion are not evidence regarding a specific instance of sexual conduct." Although I agree with the majority's conclusion that "[e]vidence of DM's pregnancy and her subsequent abortion are not evidence of a specific instance of the victim's sexual conduct," I reach this conclusion for different reasons. While the majority focuses on the language "specific instances" to reach this conclusion, I would focus on the language "victim's sexual conduct." In other words, I believe that while the pregnancy and abortion are, in fact, evidence of a specific instance of sexual conduct, they are not evidence of a specific instance of the victim's sexual conduct.
As the majority recognizes, there were two allegations of sexual penetration, but one of these "alleged sexual encounter[s] could not have been the source of DM's pregnancy" due to its timing. That leaves one alleged sexual penetration that still could have been the source of DM's pregnancy. Therefore, contrary to the majority's assertion, both evidence of DM's pregnancy and evidence of DM's abortion are evidence of a "specific instance" of sexual conduct. Indeed, if the majority were correct that the pregnancy and abortion are not such evidence, I do not see how the majority can later conclude, as it does, that this evidence is relevant-much less "highly probative"-evidence.[2]
**337 The pregnancy and the abortion are either evidence of the one alleged penetration that could have resulted in DM's pregnancy, or they are not. If they are, then the pregnancy and abortion are evidence of a specific instance of sexual conduct, but, if they are not, then the pregnancy and abortion are not even relevant-let alone "highly probative"-evidence. For these reasons, as well as for those set forth in Part III(B) of the majority's opinion, I conclude that the pregnancy and abortion are evidence of a specific instance of sexual conduct.[3]
*517 However, as mentioned earlier, I believe that such evidence is not evidence of the "victim's sexual conduct."
**338 As I stated in my dissenting statements in People v. Piscopo , 480 Mich. 966, 741 N.W.2d 826 (2007),[4] and People v. Parks , 483 Mich. 1040, 766 N.W.2d 650 (2009),[5] "conduct" refers only to "volitional actions" and thus "does not encompass involuntary acts such as those that stem from being subjected to sexual abuse." Parks , 483 Mich. at 1060, 766 N.W.2d 650 ( MARKMAN, J. , dissenting).[6]
As I stated in Parks , 483 Mich. at 1059-1062, 766 N.W.2d 650 ( MARKMAN, J. , dissenting):
This statute only excludes evidence of the "victim's sexual conduct." Thus, any inquiry into the statute's application must focus on the meaning of "conduct." The ordinary meaning of "conduct" is harmonious with the Legislature's use of "conduct" throughout the enacting legislation, 1974 PA 266, and with the Legislature's purposes **339 in enacting the rape-shield statute. Each of these interpretative guides strongly suggests that "conduct" refers only to volitional actions by the victim and does not encompass involuntary acts such as those that stem from being subjected to sexual abuse.
The definition of "conduct" varies little from dictionary to dictionary. Conduct is defined as: "personal behavior; way of acting; deportment," Random House Webster's College Dictionary (1997); "[t]he way a person acts; behavior," The American Heritage Dictionary of the English Language (1981); and "[t]he manner of guiding or carrying one's self; personal deportment; mode of action; behavior," Webster's Revised Unabridged Dictionary (1996). The common *518 theme of these definitions is that "conduct" pertains to an individual's own behavior, to actions initiated or set in motion by the individual. Being the victim of, or having been subjected to, sexual abuse by another does not by this definition of "conduct" constitute something within the scope of the rape-shield statute, and therefore should not be excluded from evidence under the authority of this statute.[7 ]
This interpretation of "conduct" is further supported by the Legislature's use of "conduct" throughout the rape-shield statute. If "conduct" is read to include abuse perpetrated against the victim by other persons, then references in the statute, MCL 750.520j(1), to "opinion evidence of the victim's sexual conduct" and "reputation evidence of the victim's sexual conduct" make no sense. Reputation and opinion evidence are typically based on a person's character, such as the person's tendency for aggression. A person's character and conduct are similar at least in the sense that they are each formed by voluntary decisions made by that individual. Actions concerning which an individual has no control cannot be **340 said to establish a person's character, so when the Legislature extended protection from reputation and opinion evidence in MCL 750.520j(1), it likely understood that such evidence could only apply with respect to a victim's sexual history over which the victim has control. Thus, the ordinary volitional understanding of "conduct" also fits within the context in which it is used in the rape-shield statute, whereas a broader definition, encompassing non-volitional behavior, including sexual abuse by others, does not.
The statute provides additional insight on the meaning of "conduct" by distinguishing "conduct" from "activity" in paragraphs (a) and (b) of MCL 750.520j(1). These paragraphs set forth two exceptions to the general inadmissibility of evidence regarding a "victim's sexual conduct" in subsection (1). Paragraph (a) renders admissible evidence of the "victim's past sexual conduct with the actor," and paragraph (b) renders admissible "specific instances of sexual activity " concerning the "source or origin of semen, pregnancy, or disease." "Activity" does not connote the concept of volition to the same extent as "conduct." "Activity" in paragraph (b) pertains to conditions that directly result from the physical sex act itself-semen, pregnancy, disease-in which the concept of volition is essentially irrelevant. In contrast, "conduct" in paragraph (a) pertains to a range of interpersonal behavior that extends beyond the physical act itself, and in which the concept of volition may be quite relevant in assessing whether the victim chose to behave in such a way that the defendant should be deemed less culpable, or not culpable at all, for the alleged offense. Interpreting "conduct" to include non-volitional action blurs the Legislature's apparently careful distinction between "conduct" and "activity."
The Legislature's use of "conduct" throughout 1974 PA 266 further supports interpreting "conduct" to include only volitional actions. See, e.g., MCL 750.520b (describing first-degree criminal sexual "conduct"). It seems unlikely **341 *519 that the Legislature intended to punish non-volitional activity under the criminal code.[8 ] Interpreting "conduct" to mean only volitional action maintains this understanding. "Identical language should receive identical construction when found in the same act."
Further uses of "conduct" in 1974 PA 266 are found in MCL 750.520a, in which the Legislature defined "actor" as "a person accused of criminal sexual conduct," MCL 750.520a(a), and "victim" as "the person alleging to have been subjected to criminal sexual conduct," MCL 750.520a(s). These definitions distinguish a person who has chosen to perform a certain act from one who had no choice in performing such act. If a victim, for example, is raped by an actor, the rape is considered to be the actor's conduct. The victim is considered to have been "subjected to " the conduct, strongly suggesting that rape is not fairly characterized as the victim's conduct. Rather, it would only be the "conduct" of the person who chose to perform the act.
**342 The overall purpose of the rape-shield statute also supports understanding "conduct" by its normal definition to encompass only volitional activity. MCL 750.520j was clearly enacted to prevent the introduction of embarrassing evidence regarding the victim's sexual history at trial. Such prohibition, it was hoped, would increase the likelihood that sexual assault victims would report such assaults and not be deterred from doing so by the prospect of embarrassment. Yet, reading the rape-shield statute to exclude evidence regarding past abuse suffered by the victim bears no apparent relationship to this purpose. While any person may well be uncomfortable about revealing past instances in which he or she was sexually abused, such uneasiness is sharply distinct from the kind of embarrassment that rape-shield statutes were designed to foreclose-embarrassment caused as a function of one's own misbehavior or questionable conduct. [Citation omitted.]
Not only is this the more textually grounded approach to giving meaning to MCL 750.520j, but it is also the approach that best facilitates the production of evidence, which is the "lifeblood of the criminal justice process ... and indispensable in ensuring fair and just [jury] determinations." People v. Goldston , 470 Mich. 523, 546, 682 N.W.2d 479 (2004) ( MARKMAN, J. , concurring).
In the instant case, the proffered evidence relates to defendant's sexual abuse of DM; thus, the rape-shield statute does *520 not apply. More specifically, the prosecutor is seeking to introduce evidence that DM was pregnant, obtained an abortion, and did not have sexual intercourse with anybody other than defendant.[9] This evidence, if believed by the jury, seemingly proves that defendant sexually abused DM. However, evidence of **343 sexual abuse is not tantamount to evidence of the "victim's sexual conduct" and thus is not subject to the rape-shield statute.
Again, I agree with the majority that evidence of DM's pregnancy, abortion, and lack of other sexual partners is not subject to the rape-shield statute and is admissible under the Michigan Rules of Evidence. However, I believe that evidence of DM's pregnancy and evidence of the abortion are not subject to the rape-shield statute for different reasons than the majority. In all other respects, I agree with the majority's conclusions and its reasoning.

The third-degree CSC charges were in the alternative to the first-degree CSC charges.

DM's mother testified at the preliminary examination that she was hospitalized from December 31, 2013 to January 5, 2014. On cross-examination, she answered in the affirmative when defense counsel asked whether she was hospitalized from December 2014 to January 2015. Because this alleged sexual encounter could not have been the source of DM's pregnancy regardless of which date range was accurate, this discrepancy is not material to the present appeal.

MRE 404 provides, in relevant part:
(a) Character evidence generally . Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
* * *
(3) Character of alleged victim of sexual conduct crime. In a prosecution for criminal sexual conduct, evidence of the alleged victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease[.]

People v. Sharpe , 501 Mich. 899, 901 N.W.2d 899 (2017).

However, in cases involving statutory rape, Michigan courts generally deemed such evidence irrelevant to the charge. See, e.g., People v. Russell , 241 Mich. 125, 126-127, 216 N.W. 441 (1927) ("The general rule is that the chastity or want of chastity of the prosecutrix under the age of consent is unimportant in a statutory rape case, and that testimony on that subject is, therefore, immaterial.").

In addition to the enumerated exceptions within the rape-shield statute, evidence of a complainant's sexual conduct may be admitted to preserve the defendant's constitutional right to confrontation. See People v. Hackett , 421 Mich. 338, 348, 365 N.W.2d 120 (1984).

However, MCL 750.520j(2) only requires a written motion and offer of proof if such evidence is offered by the defendant. Accordingly, even if this evidence was subject to the rape-shield statute, the prosecutor was not required to move for its admission.

We do not adopt Chief Justice Markman 's definition of the term "conduct" as expressed in his concurring opinion for the reasons noted by Justice Young in People v. Parks , 483 Mich. 1040, 766 N.W.2d 650 (2009) ( Young, J. , concurring).

To the extent that defendant cites caselaw from Minnesota and Wisconsin wherein courts held that evidence demonstrating a lack of sexual conduct was prohibited under the rape-shield statutes in those states, we note that Minnesota's and Wisconsin's statutes do not contain the phrase "specific instances" and, accordingly, we find this caselaw unpersuasive. See Minn. Stat. § 609.347(3) (referring to "evidence of the victim's previous sexual conduct" generally); Wis. Stat. § 972.11(2)(b) (using the phrase "any evidence concerning the complaining witness's prior sexual conduct") (emphasis added).

Although we conclude that the evidence offered is not rendered inadmissible by the rape-shield statute, we offer a note of caution to prosecutors who seek to introduce this type of evidence. As we have stated before, the admission of evidence typically barred by the rape-shield statute "may be required to preserve a defendant's constitutional right to confrontation." Hackett , 421 Mich. at 348, 365 N.W.2d 120. The admission of this type of evidence may open the door to the introduction of evidence whose admission may otherwise have been precluded by the rape-shield statute.

We note that the trial court's MRE 402 and MRE 403 analysis did not sufficiently address the basis of its decision to exclude the evidence of abortion and the lack of sexual partners. Cf. People v. Johnigan , 265 Mich. App. 463, 469-470, 696 N.W.2d 724 (2005) (opinion by SAWYER, J.); Woodington v. Shokoohi , 288 Mich. App. 352, 357, 792 N.W.2d 63 (2010). To the extent that the trial court based its ruling excluding evidence of the lack of sexual partners and the abortion on MRE 404(a)(3), that was an abuse of discretion. MRE 404(a) only excludes character evidence used to prove conformity to a character trait. The prosecutor, however, articulated valid, nonpropensity explanations for the evidence of lack of sexual partners and the abortion.

Although I believe Chief Justice Markman raises an interesting point concerning the meaning of "sexual conduct" in the rape-shield statute, the prosecutor here specifically argued that "conduct" includes both voluntary and involuntary behavior, and I would thus leave this question for another day.
Because I believe that evidence of an abortion is one step more attenuated from a specific instance of sexual conduct than evidence of a pregnancy is, I agree with the majority's conclusion that evidence of an abortion does not fall under the rape-shield statute, despite otherwise agreeing with Chief Justice Markman 's reading of the plain language of the statute.

Contrary to the majority's reasoning, I do not believe that reading the exception in MCL 750.520j(1)(b) alongside MCL 750.520j(1) leads to the conclusion that pregnancy is not evidence of a specific instance of sexual conduct. While MCL 750.520j(1)(b) does no work in this context, because evidence of a pregnancy is not evidence of the source of itself, that does not change the fact that it is evidence of a specific instance of sexual conduct.

However, given the many ways in which a pregnancy may sadly be terminated without medical intervention, this argument about relevance does not appear to be particularly strong, even if evidence of the pregnancy is admitted.

In Piscopo , the Court denied leave to appeal and I, joined by Justice Cavanagh , dissented. In that case, the defendant (a pastor) sought to admit evidence that the complainant had made prior false allegations of sexual abuse against another pastor and that the complainant also claimed to have been raped by a demon. I would have reversed the trial court's decision that barred the admission of this evidence.

In Parks , this Court denied leave to appeal. Justice Young wrote a concurring statement, Chief Justice Kelly wrote a dissenting statement (focused exclusively on the Confrontation Clause), and I wrote a dissent that Justice Cavanagh again joined. In that case, the defendant sought to introduce evidence that prior to her allegations against the defendant, the complainant had alleged that her step-grandfather sexually abused her. This was relevant because during the trial the complainant described sexual acts that a child of her age typically would not have knowledge of or be able to describe and the medical doctor who examined the complainant after her allegations against her step-grandfather and after her allegations against the defendant testified that the complainant's history led him to believe that she had been abused. I would have reversed the trial court's decision that barred the admission of the evidence of the complainant's past sexual abuse.

See also People v. Duenaz , 498 Mich. 969, 969, 873 N.W.2d 303 (2016) ("[W]e encourage the Legislature to clarify whether evidence of prior sexual abuse constitutes 'sexual conduct' within the meaning of the rape-shield statute, MCL 750.520j.").

For example, one would not ordinarily describe a rape victim as having "engaged in" or "taken part in" sexual conduct. And it would be equally odd for a speaker of American English to assert, for example, that a rape victim "reflected upon the trauma she had incurred as the result of her sexual conduct" or that the victim "testified at trial as to her own sexual conduct suffered at the hands of the defendant."

Under MCL 750.520b(1)(b), "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and ... [t]hat other person is at least 13 but less than 16 years of age" and one of several enumerated aggravating circumstances exists, such as "[t]he actor is a member of the same household as the victim." As I stated in Piscopo , 480 Mich. at 970, 741 N.W.2d 826 ( Markman, J. , dissenting), in regards to MCL 750.520d, which is very similar to MCL 750.520b,
MCL 750.520d states that a person is guilty of "criminal sexual conduct in the third degree" if that person
engages in sexual penetration with another person and if any of the following circumstances exist:
(a) [t]hat other person is at least 13 years of age and under 16 years of age.
If "conduct" referred to passive or involuntary activity, then a girl who was raped by a 15-year-old boy would herself be guilty of third-degree [criminal sexual conduct] under the law. However, such an outcome would obviously be absurd and illogical. Hence, the use of "conduct" throughout the relevant statute suggests strongly that the Legislature must have intended "conduct" to refer to volitional behavior and that the term does not encompass involuntary sexual abuse.

DM was 14 years old at the time of the abuse and thus was legally unable to give consent. See People v. Starks , 473 Mich. 227, 235, 701 N.W.2d 136 (2005) ; MCL 750.520b ; MCL 750.520c ; MCL 750.520d ; MCL 750.520e.