*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

JUSTIN MICHAEL BAILEY,

Defendant-Appellee.

UNPUBLISHED
February 7, 2019

No. 336685
Livingston Circuit Court
LC No. 15-023204-FH

ON REMAND

Before: CAVANAGH, P.J., and SERVITTO[1] and BECKERING, JJ.

PER CURIAM.

Defendant is charged with third-degree criminal sexual conduct (incapacitated victim), MCL 750.520d(1)(c), and third-degree criminal sexual conduct (force or coercion), MCL 750.520d(1)(b). The prosecutor filed an interlocutory application for leave to appeal a pretrial order allowing defendant to cross-examine witnesses and present rebuttal witnesses regarding the results of a DNA sample obtained from the victim's rape kit, which included the DNA of both defendant and a second, unidentified man, pursuant to an exception to the rape-shield statute, MCL 750.520j(1)(b). After we denied the prosecutor's application, *People v Bailey*, unpublished order of the Court of Appeals, entered May 17, 2017 (Docket No. 336685) (*Bailey I*), our Supreme Court remanded the case to this Court for consideration as on leave granted. *People v Bailey*, 501 Mich 883 (2017) (*Bailey II*). This panel then reversed the trial court's order to the extent that the trial court allowed defendant to introduce evidence of the second male DNA donor, and remanded for further proceedings. *People v Bailey*, unpublished per curiam opinion of the Court of Appeals, issued February 27, 2018 (Docket No. 336685) (*Bailey III*). On November 21, 2018, our Supreme Court vacated our opinion and remanded the case to us for

---

[1] Judge Servitto has been designated to serve as a substitute for former Judge Hoekstra, who was on the panel in this case. For ease of discussion, we use the term "this panel" in discussing the prior opinion in this case.

reconsideration in light of *People v Sharpe*, 502 Mich 313; 918 NW2d 504 (2018). *People v Bailey*, 919 NW2d 399 (Mich, 2018) (*Bailey IV*). Upon reconsideration on remand, we affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

This panel's opinion in *Bailey III* summarized the underlying facts and proceedings as follows:

On November 29, 2014, the complainant became intoxicated at a house party and began vomiting in a bathroom. Defendant allegedly indicated that he was a firefighter who could assist her, and a friend therefore left the complainant in defendant's care. It is alleged that defendant then locked the bathroom door, pulled down the complainant's pants, and proceeded to engage in nonconsensual vaginal intercourse. The complainant's friends took her to the hospital where a rape kit was administered. DNA tests subsequently performed by the Michigan State Police forensic scientists on samples collected from the victim's vulva revealed the presence of DNA from defendant and another unidentified male donor.[2]

Before trial, the prosecutor filed a motion to exclude evidence of the victim's sexual conduct with people other than defendant, including evidence of the unknown man's DNA. Defendant filed a motion to allow evidence relating to the unknown male's DNA as an exception to the rape shield act. Relevant to this appeal, according to defendant, the presence of a second male DNA donor was admissible, despite the rape-shield statute, because without this evidence defendant could not fully cross-examine the forensic scientist about the DNA testing methodologies used in this case and this line of inquiry is relevant to determining the source of the semen in question. Following hearings on the parties' motions, the trial court granted the prosecutor's motion in part, ordering that defendant could not question the victim or other witnesses about the victim's sexual acts with anyone other than defendant. However, with regard to the DNA evidence, the trial court's order states:

---

[2] In a footnote, this panel provided the following clarification regarding the DNA testing in this case:

We note that the DNA testing in this case involved Y-STR analysis, which cannot be used to uniquely identify an individual because all males in the paternal line share the same Y-STR haplotype and, though less common, an unrelated male could also share the same Y-STR haplotype. See *People v Wood*, 307 Mich App 485, 511-514; 862 NW2d 7 (2014), vacated in part on other grounds by 498 Mich 914 (2015). . . . While we acknowledge that defendant cannot be uniquely identified based on the Y-STR haplotype, for ease of discussion we will refer to the two donors as defendant and the unidentified or other male. [*Bailey III*, unpub op at 2 n 2.]

> The Court DENIES the People's Motion and GRANTS the Defendant's Motion to the extent that Defendant shall be allowed to cross-examine witnesses and provide rebuttal witnesses regarding the results of the DNA sample. Such evidence is not precluded by the rape-shield act. MCL 750.520j(1)(b) . . . by its plain terms allows evidence regarding an alternative source of semen. Such evidence shall only be admissible upon a proper showing that the probative value outweighs any danger of unfair prejudice. To the extent that the lab report puts the source of semen at issue, Defendant may cross-examine witnesses as to those lab results. The Court will exercise authority to control the manner of questioning, to prevent unfair prejudice.

The trial court stayed proceedings, and the matter is now before us on remand from the Supreme Court as on leave granted. [*Bailey III*, unpub op at 1-2 (alteration in original).]

In *Bailey III*, this panel concluded that the trial court abused its discretion by concluding that evidence of another man's DNA in the victim's rape kit was relevant to a fact at issue and admissible under MCL 750.520j(1)(b), a provision of the rape-shield statute allowing admission of "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease[]" if the evidence is material and its inflammatory or prejudicial nature does not outweigh its probative value. *Bailey III*, unpub op at 3-5. This panel stated that, "on the facts presented in this case, evidence of a second male donor with a different Y-STR haplotype would not generally be relevant to showing that the presence of the Y-STR haplotype matching defendant was caused by someone other than defendant." *Id*. at 5. This panel noted that "defendant has not offered a factual version of events that would render the unidentified male's DNA probative of a material issue or defense theory. He allegedly told police that he was in the bathroom with the victim but that he could not recall whether or not he had sex with the victim." *Id*. at 5 n 5 (citation omitted). This panel explained its decision as follows:

> . . . [T]he only way evidence of a second male donor could potentially be relevant in this case is if, as defendant claims, the presence of a second donor could somehow affect the genetic analysis involved and could lead to an error in identifying the Y-STR haplotype that was found to match defendant. However, defendant failed to make an offer of proof relating to his scientific theories and he has thus failed to demonstrate the relevance of the evidence relating to the second male donor. Without such an offer of proof, the trial court could not determine that MCL 750.520j(1)(b) applied or that defendant was constitutionally entitled to introduce this evidence because there is no basis for finding that the evidence defendant proposed to offer was material to a fact at issue in the case – the accuracy of the results of the rape kit test. Further, without an offer of proof demonstrating the relevance of the second male donor, the trial court also could not reasonably determine that the inflammatory or prejudicial nature of this evidence (i.e., that the victim engaged in sexual acts with another man close in time to the alleged sexual assault) did not outweigh the probative value of the evidence. In sum, absent an offer of proof demonstrating that the presence of a

-3-

second male donor affected, or at least could have affected, the DNA testing relating to the victim's rape kit, evidence of the presence of an unidentified male donor was inadmissible as evidence of a specific instance of the victim's sexual conduct under MCL 750.520j(1). The trial court thus abused its discretion by admitting this evidence. [*Bailey III*, unpub op at 5-6 (footnote and citations omitted).]

This panel therefore reversed and remanded for further proceedings. *Id*. at 6.

Defendant filed an application for leave to appeal in our Supreme Court and, in lieu of granting leave, the Court vacated the *Bailey III* judgment and remanded this case to us for reconsideration in light of *Sharpe*, 502 Mich 313. See *Bailey IV*, 919 NW2d at 399. We conclude that, under *Sharpe*, the evidence of the second male DNA donor in this case does not fall within the purview of the rape-shield statute, i.e., the rape-shield statute does not govern its admissibility. However, the prosecutor should be permitted on remand to file any appropriate motions or make any appropriate objections challenging the admission of this evidence under MRE 402 or MRE 403.

MCL 750.520j of the rape-shield statute provides as follows:

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

In *Bailey III*, this Court held that "evidence of the presence of an unidentified male donor was inadmissible as evidence of a specific instance of the victim's sexual conduct under MCL 750.520j(1)." *Bailey III*, unpub op at 6.

In *Sharpe*, our Supreme Court addressed MCL 750.520j(1). In that case, the defendant was charged with various criminal sexual conduct offenses for allegedly engaging in sexual penetration and sexual conduct with the 14-year-old victim. *Sharpe*, 502 Mich at 320. At issue

was the prosecutor's pretrial motion to admit evidence of the victim's pregnancy, abortion, and lack of sexual partners other than the defendant during the relevant time period. *Id*. at 321. In particular, the issue in *Sharpe* turned on whether this evidence constituted "[e]vidence of specific instances of the victim's sexual conduct[]" for the purpose of MCL 750.520j(1). *Id*. at 328. Our Supreme Court held that evidence of the victim's pregnancy, abortion, and lack of sexual partners other than the defendant did not fall within the scope of the rape-shield statute. *Id*. at 319. Our Supreme Court stated that "a specific instance of the victim's sexual conduct must relate to a particular occurrence of the victim's sexual conduct." *Id*. at 328. The Court reasoned as follows:

> Evidence of [the victim's] pregnancy and her subsequent abortion are not evidence of a specific instance of the victim's sexual conduct. Although this evidence necessarily implies that sexual activity occurred that caused the pregnancy, the pregnancy and abortion are not evidence regarding a specific instance of sexual conduct. As we have previously stated, whether evidence falls within the purview of the rape-shield statute concerns whether the evidence "*amount*[s] to or *reference*[s] specific conduct," *People v Ivers*, 459 Mich 320, 329; 587 NW2d 10 (1998), not whether the evidence constitutes a consequence of or relates to sexual activity generally. In this case, the pregnancy and abortion evidence alone does not describe a particular or specific sexual encounter. The evidence demonstrates only that at least one act of sexual intercourse occurred in 2014 and does not describe one particular occurrence of sexual conduct. Because [the victim's] pregnancy and abortion are not evidence of a particular occurrence of sexual conduct, evidence thereof does not fall under the purview of the rape-shield statute, and the Court of Appeals erred in determining otherwise. [*Sharpe*, 502 Mich at 328-329 (alterations in original).]

The *Sharpe* Court further stated that its reasoning was bolstered by a reading of MCL 750.520j as a whole, noting:

> MCL 750.520j(1) explains that specific instances of the victim's sexual conduct shall not be admitted, but MCL 750.520j(1)(b) excepts relevant "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease." These specific instances of sexual conduct may be used to "show," or "cause or permit to be seen," *Merriam-Webster's Collegiate Dictionary* (11th ed), the "origin of semen, pregnancy, or disease." In so phrasing the statute, the Legislature has distinguished between the specific instance of sexual activity that shows the *origin* or the *source* of the semen, pregnancy, or disease – i.e., whatever sexual act led to these consequences – and the semen, pregnancy, or disease itself. Accordingly, the Legislature has *ipso facto* made clear that semen, pregnancy, or disease, while perhaps related to sex, are not themselves the specific instances of sexual conduct envisioned by MCL 750.520j. And because pregnancy, and by extension abortion, is not a specific instance of sexual conduct, neither pregnancy nor abortion falls within the rape-shield statute. [*Sharpe*, 502 Mich at 329-330 (alterations in original).]

Also, evidence that the victim did not engage in sexual intercourse with partners other than the defendant during the relevant time period did not fall within the purview of the rape-shield statute given that "[t]his evidence demonstrates an absence of conduct, not a 'specific instance' of sexual conduct." *Id*. at 330.

Our Supreme Court in *Sharpe* further explained that its decision was consistent with the purposes of the rape-shield statute, noting:

> The rape-shield statute was designed to prevent unwelcome and unnecessary inquiry into a complainant's sexual activities, thereby protecting the complainant's privacy and protecting the complainant from suffering unfair prejudice based on her sexual history. But here, the complainant has voluntarily offered evidence of her pregnancy, abortion, and lack of sexual history to bolster her allegations of criminal sexual conduct against defendant. There is no indication from our Legislature or in our caselaw that the rape-shield statute was designed to prevent a complainant's disclosure of her own sexual history or its attendant consequences. Accordingly, giving effect to the plain language of the statute and to the Legislature's intent in enacting the rape-shield statute, we hold that the entirety of the evidence offered here is not subject to the rape-shield statute. [*Id*. at 330-331 (citations omitted).]

Finally, the Supreme Court in *Sharpe* concluded that the evidence was admissible under MRE 402[3] and MRE 403[4] because the evidence was relevant and the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. *Sharpe*, 502 Mich at 331-335.

The analysis in *Sharpe* leads us to the conclusion that the evidence of the second male DNA donor in this case does not fall within the scope of the rape-shield statute, i.e., the evidence is not subject to the rape-shield statute. The rape-shield statute applies to "[e]vidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct . . . ." MCL 750.520j(1). Plainly, the evidence concerning the second male DNA donor here is not opinion evidence of the victim's sexual conduct or reputation evidence of the victim's sexual conduct, nor does the prosecutor

---

[3] MRE 402 provides, in pertinent part, that "[e]vidence which is not relevant is not admissible." Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. See also *Sharpe*, 502 Mich at 331.

[4] MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

See also *Sharpe*, 502 Mich at 331-332.

-6-

argue as much. The question is whether the DNA evidence constitutes evidence of a specific instance of the victim's sexual conduct.

In the prosecutor's brief on appeal, the prosecutor concedes that, "[i]n this case, the DNA sample is not identified as saliva, semen, or sperm. It's just male DNA based on Y chromosome screening. In fact, the lab report refers to 'vulvar swabs non-sperm fraction.' " See also *Bailey III*, unpub op at 5 n 4 ("On appeal, the prosecutor asserts that the evidence of an unidentified male donor may not be evidence relating to the source of 'semen' because the lab report describes the sample taken from the victim as a 'DNA extract, non-sperm fraction.' Thus, according to the prosecutor[,] the other male sample could be saliva or some other substance not specifically mentioned in MCL 750.520j(1)(b).").

Under the reasoning in *Sharpe*, we believe that evidence of an unidentified male's DNA contained in the victim's rape kit is not evidence of a specific instance of the victim's sexual conduct for the purpose of MCL 750.520j(1). Although this evidence could imply that sexual activity occurred that caused the unknown male's DNA to be present in the victim's vulva, it is not evidence of a specific instance of sexual conduct. The DNA evidence here does not describe a particular or specific sexual encounter but rather demonstrates at most that some type of sexual activity may have occurred at some point between the victim and the unidentified male. Hence, the unknown male's DNA sample obtained from the rape kit is not evidence of a particular occurrence of sexual conduct and does not fall within the purview of the rape-shield statute. See *Sharpe*, 502 Mich at 328-329.

This conclusion is further bolstered by the *Sharpe* Court's analysis of MCL 750.520j as a whole. As noted in *Sharpe*, the Legislature distinguished between the specific instance of sexual activity that comprised the source or origin of the semen, pregnancy, or disease and the semen, pregnancy, or disease itself. *Sharpe*, 502 Mich at 329. In other words, while semen, pregnancy, or disease might be "related to sex," semen, pregnancy, and disease "are not themselves the specific instances of sexual conduct envisioned by MCL 750.520j." *Id*. In this case, the unknown male's DNA recovered in the victim's rape kit, while possibly related to sex,[5] is not itself a specific instance of sexual conduct envisioned by the rape-shield statute. Accordingly, the DNA evidence in this case falls outside the purview of the rape-shield statute, and thus, the evidence is not inadmissible under the rape-shield statute.

Nonetheless, the evidence of the unknown male DNA donor could still be inadmissible under MRE 402 or MRE 403. In particular, the evidence could be deemed irrelevant for the reasons set forth in this panel's opinion in *Bailey III*, i.e., defendant has offered no basis to conclude that the evidence is material to a fact at issue in the case. Defendant has provided no offer of proof such as an expert opinion to establish that the unknown male's DNA sample affected the accuracy of the identification of defendant's DNA recovered from the rape kit. But the arguments in this case have thus far concerned the rape-shield statute. That is, the prosecutor's arguments about relevancy and prejudice have been in the context of the application

---

[5] Again, it is unknown whether the unidentified male's DNA sample is comprised of semen, saliva, or some other substance.

of the rape-shield statute, as opposed to a more basic evidentiary objection or argument purely under MRE 402 or MRE 403. Therefore, our analysis is confined to the rape-shield statute but our decision in this appeal is without prejudice to the prosecutor's filing an appropriate motion or making an appropriate objection on remand challenging the admission of any evidence concerning the unknown male's DNA under MRE 402 or MRE 403.

In conclusion, the trial court reached the correct result in part, given that the trial court ruled that the rape-shield statute did not bar the admission of the evidence concerning the unidentified male DNA donor. This Court will affirm a trial court's decision if it reached the correct result for the wrong reason. *People v McLaughlin*, 258 Mich App 635, 652 n 7; 672 NW2d 860 (2003). But we vacate, in part, the trial court's decision that defendant will be allowed to cross-examine witnesses and provide rebuttal witnesses regarding the results of the DNA sample. Whether the evidence is ultimately admissible must be determined by the trial court on remand only after considering any appropriate motions or objections made by the prosecutor under MRE 402 or MRE 403. Accordingly, the trial court's order is affirmed in part and vacated in part because, under *Sharpe*, the evidence of the second male DNA donor in this case does not fall within the scope of the rape-shield statute, but the prosecutor should be permitted on remand to file any appropriate motions or make any appropriate objections challenging the admission of this evidence under MRE 402 or MRE 403.

Affirmed in part, vacated in part, and remanded for further proceedings as set forth in this opinion. We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Jane M. Beckering