*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CRAIG TERRELL YOUNG,

Defendant-Appellant.

UNPUBLISHED
July 23, 2020

No. 345085
Saginaw Circuit Court
LC No. 17-044496-FH

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant was convicted by a jury of operating a motor vehicle while intoxicated, third offense, MCL 257.625(1); MCL 257.625(9)(c). The trial court sentenced defendant to serve a prison term of 1½ to 15 years. Defendant appeals by right. We affirm.

## I. BACKGROUND

This case arises out of an incident that occurred on April 18, 2017, when defendant was driving a vehicle while intoxicated and hit a parked car. At trial, an eyewitness testified that while she was inside her parked vehicle outside her then-girlfriend's house, she saw a SUV "swerving and speeding" down Maplewood Street; the SUV eventually hit a silver car that was parked on the other side of the street. The eyewitness did not see defendant driving the SUV. After the accident, the eyewitness immediately got out of her vehicle to approach the SUV. Although she lost eye contact with the SUV for "a couple seconds" while she walked around the back of her vehicle to approach the SUV, she testified that her vehicle was not very far from the SUV. As she was approaching the SUV, she saw defendant step out of the driver's seat. The eyewitness did not observe defendant begin to open the SUV's driver-side door, but when she regained a view of the SUV, defendant was in the process of opening the door. She noticed that defendant had blood on his face and that he was slurring his words. She helped defendant locate his cell phone, which turned out to be on the floor of the SUV.

After defendant retrieved his cell phone, the eyewitness made contact with an unidentified person sitting in the passenger seat of the SUV. However, the eyewitness "backed away" when the passenger "got a little bit aggressive." In the meantime, she lost sight of defendant. The

-1-

eyewitness noticed that she had blood on her hands, so she went to the side of the house to wash her hands. While she was washing her hands, defendant reappeared and asked the eyewitness whether she would "take him somewhere," but she refused. The eyewitness's girlfriend called the police. The eyewitness and her girlfriend waited for the police in the eyewitness's vehicle, whereupon defendant also got into the back of the eyewitness's vehicle. The eyewitness explained that she "had to get somebody to get him out."

The officer who responded to the scene testified that he noticed that defendant had blood on his face and his shirt. Defendant also had scratches on his nose. Defendant told the officer that he was walking down Maplewood when he saw the SUV swerving down the road and that he fell and injured his face because he was trying to avoid the SUV. The officer did not notice any dirt on defendant. The officer also did not notice any blood on the pavement, apart from blood that was outside of the SUV by the driver's seat. The officer testified that there was blood on the inside of the SUV, which was "predominantly on the driver's side." A forensic scientist with the Michigan State Police testified that defendant's blood sample showed 0.297 grams of alcohol per 100 milliliters of blood. A bottle of liquor was found inside the SUV. However, no fingerprints were taken and no sample of the blood was taken. A search for the owner of the SUV returned two possible names, neither of which was defendant.

Defendant filed a postjudgment motion for a new trial, attaching the affidavit of Derrick Morris, who stated that he had been the driver of the SUV and that he was willing to testify to that information. Defendant also asserted that before trial, he told his counsel that there were two witnesses who were willing to testify that they were walking with defendant on Maplewood when the accident occurred. Defendant asserted that his counsel was unable to contact them and "refused to investigate and produce them at trial." On the basis of Morris's affidavit and defense counsel's failure to produce the two witnesses, defendant argued that he was entitled to a new trial. The trial court denied defendant's motion. This appeal followed.

II. JURY INSTRUCTION

Defendant argues that the trial court erred by instructing the jury on flight. We disagree.

"We review jury instructions in their entirety to determine if error requiring reversal occurred." *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001). The trial court must give a jury instruction if a party requests the instruction and it is applicable to the case. MCR 2.512(D)(2). See also *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) ("A trial court is required to give a requested instruction, except where the theory is not supported by evidence."). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

"It is well established that evidence of flight is admissible to show consciousness of guilt." *People v Compeau*, 244 Mich App 595, 598; 625 NW2d 120 (2001). "Flight" includes "fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Nevertheless, "[f]light can result from factors other than guilt, and it is for the jury to determine what caused defendant to flee." *People v Taylor*, 195 Mich App 57, 63; 489 NW2d 99 (1992).

Defense counsel objected to the jury instruction on flight. The trial court determined that because defendant asked the eyewitness for a ride, there was some evidence that defendant attempted to the leave the scene. However, the trial court modified M Crim JI 4.4 to use the milder word "leave" instead of "run away" or "hide." The trial court instructed the jury as follows:

> There has been some evidence that the defendant tried to leave after the alleged crime. This evidence does not prove guilt. A person may run or hide or leave for innocent reasons such as panic, mistake, or fear. However, a person may also run or hide or leave because of a consciousness of guilt. You must decide whether the evidence is true and, if true, whether it shows that the defendant had a guilty state of mind.

We conclude that the trial court did not abuse its discretion by instructing the jury on flight. Rather, the trial judge commendably and thoughtfully tailored the instruction to the facts. A reasonable juror could infer that when defendant asked the eyewitness for a ride, he was attempting to flee the scene to escape custody. See *Coleman*, 210 Mich App at 4. Likewise, defendant got into the eyewitness's car without permission and had to be removed.

Defendant also argues that a reasonable juror could not infer that he feared apprehension after the accident. This Court has held that a trial court errs by instructing the jury on flight where, although the defendant walked away from the scene, there was no indication that the "defendant feared apprehension at the time she left the scene . . . " *People v Hall*, 174 Mich App 686, 691; 436 NW2d 446 (1989). Thus, "mere departure from the scene" does not, by itself, constitute " 'flight' in the legal sense." *Id*. Here, however, we agree with the prosecutor's closing argument that defendant's request to leave the scene by car may have been inconsistent with having just been nearly hit by a car while "walking back from" a nearby store. A reasonable juror could infer that defendant asked the eyewitness for a ride because he knew he had been driving the SUV and therefore feared apprehension. See *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) (providing that evidence of flight is admissible to support an inference of a consciousness of guilt in combination with other circumstances). The trial court properly instructed that the jury was to determine whether defendant's alleged attempt to leave the scene evidenced a guilty mind. See *Taylor*, 195 Mich App at 63. In sum, because there was some evidence that defendant attempted to flee the scene, the trial court did not commit error requiring reversal by instructing the jury on flight. See *Aldrich*, 246 Mich App at 124.

## III. NEWLY DISCOVERED EVIDENCE

Next, defendant argues that he was entitled to a new trial on the basis of Morris's affidavit. We disagree.

"This Court reviews a trial court's decision to grant or deny a motion for new trial for an abuse of discretion." *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Sharpe*, 502 Mich 313, 324; 918 NW2d 504 (2018). We review a trial court's factual findings for clear error. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016).

"Historically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence." *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). Thus,

> a defendant must show that (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*Id*. at 313 (internal quotation omitted).]

The defendant bears the burden of satisfying all four elements. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). The trial court did not make conclusions with respect to the first three elements, so we assume without deciding that they were satisfied and focus our analysis on the fourth element.

> With respect to the fourth factor, our Supreme Court has explained:

> > In order to determine whether newly discovered evidence makes a different result probable on retrial, a trial court must first determine whether the evidence is credible. In making this assessment, the trial court should consider all relevant factors tending to either bolster or diminish the veracity of the witness's testimony. A trial court's function is limited when reviewing newly discovered evidence, as it is not the ultimate fact-finder; should a trial court grant a motion for relief from judgment, the case would be remanded for retrial, not dismissal. In other words, a trial court's credibility determination is concerned with whether a reasonable juror could find the testimony credible on retrial. [*People v Johnson*, 502 Mich 541, 566-567; 918 NW2d 676 (2018) (citations omitted).]

"A false confession (i.e., one that does not coincide with established facts) will not warrant a new trial, and it is within the trial court's discretion to determine the credibility of the confessor." *Cress*, 468 Mich at 692.

> We conclude that a reasonable juror would not find Morris's testimony to be credible on retrial. See *Johnson*, 504 Mich at 567. Morris's affidavit stated, "In April 2017, I was up for days drinking and taking drugs and borrowed a car. I was driving on Maplewood in Saginaw and hit a parked car." Although Morris's statements are consistent with the evidence that *a vehicle* was traveling down Maplewood and hit *a parked car*, Morris did not provide any details with respect to the type of vehicle he borrowed or hit. Furthermore, as the trial court suggested, Morris's affidavit did not attempt to rebut the eyewitness's testimony that she saw defendant get out of the SUV from the driver's side.

> The central problem with defendant's defense is the sheer implausibility of Morris crashing the SUV and sustaining non-trivial injuries while under the influence of multiple drugs and sleep deprivation, and then in the span of "a few seconds" somehow swiftly getting out of the vehicle and leaving the scene; while defendant, after having just been injured trying to avoid the SUV and also quite drunk, got fully into the SUV immediately after Morris vacated it, lost his phone on the floor, and closed the door at least partway, before getting back out again. Defendant accurately notes that such a scenario is not physically impossible. However, its implausibility, particularly

given defendant's condition and Morris's supposed condition, remains unaddressed by Morris's affidavit. For these reasons, we conclude that the trial court did not clearly err by finding that Morris's proposed testimony was not credible and therefore that defendant failed to establish that Morris's proposed testimony would have made a different result probable on retrial. See *Cress*, 468 Mich at 692. Therefore, the trial court did not abuse its discretion by denying defendant's motion for a new trial. See *id*. at 691.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that his counsel provided ineffective assistance by failing to investigate and produce the two witnesses who were allegedly willing to corroborate defendant's claim that he was walking when the accident occurred. We disagree.

An ineffective assistance of counsel issue presents a "mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*. To prevail on a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel is presumed to have been effective, and "the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Likewise, counsel's performance is presumed to have been based on a sound trial strategy. *Trakhtenberg*, 493 Mich at 52. However, "a court cannot insulate the review of counsel's performance by calling it trial strategy," and trial counsel's strategic choices must be premised on a reasonably complete underlying investigation. *Id*. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Allen*, ___ Mich App ___, ___; ___ NW2d ___ (2020), slip op at p 9 (quotation omitted).

Defendant has not overcome the presumption of sound trial strategy here. Defendant's affidavit indicates that he told trial counsel that he had been walking with a McClain and a Thomas at the time of the accident. Defendant averred that counsel "claimed he could not contact them and refused to investigate and produce them at trial." As the trial court observed, this indicates that counsel did actually try to find McClain and Thomas. We note that defendant has not offered any indication that he ever told trial counsel the first names of the two men, or that he provided any explanation of how to contact them. Indeed, even on appeal, defendant has not revealed their full names nor provided affidavits from them. We are not persuaded that defendant's characterization of counsel having "refused" to investigate the two men is anything more than a subjective impression with no basis in fact. Defendant has not overcome the presumption that counsel engaged in as reasonable and thorough an investigation as possible under the circumstances.

We also disagree that defendant was deprived of a substantial defense. During cross-examination of the police officer, defense counsel elicited testimony that defendant told him that he was walking down Maplewood and that he fell and injured his face because he was trying to

avoid the SUV that was swerving down the road. During a vigorous cross-examination, counsel was able to elicit testimony from the eyewitness that she did not in fact see defendant begin to open the SUV's door and she paid no attention to the possibility of any pedestrians in the area, establishing that defendant's theory of the case was at least possible. Defense counsel also bolstered the theory that defendant was not driving the SUV during closing argument. Because defendant raised his defense at trial, defendant was not deprived of a substantial defense. See *Dixon*, 263 Mich App at 398. For these reasons, we conclude that defense counsel's performance did not fall below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 51. Moreover, on the basis of the testimony from the eyewitness and the officer at trial, we conclude that there was not a reasonable probability that the outcome would have been different. *Id.*

Affirmed.

/s/ Michael J. Riordan
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause