*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSEPH EDWARD CUTRIGHT,

Defendant-Appellant.

UNPUBLISHED
May 27, 2025
2:02 PM

No. 366287
Wayne Circuit Court
LC No. 22-003602-01-FC

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

A jury found defendant guilty of second-degree murder, MCL 750.317; possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f; and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant argues that the trial court erred by allowing the introduction of other-acts evidence and by failing to instruct the jury properly. Defendant further argues that defense counsel was ineffective, and he is entitled to resentencing because his sentence was disproportionate. We affirm.

## I. BACKGROUND

In June 2021, Lisa Walker was selling drugs out of her home. Defendant was at the home one evening, and Steve Compton allowed a customer into the house. The customer attempted a robbery and shot at defendant. Walker and defendant thought that Compton set them up. When Compton returned to the house the following morning, he and Walker argued. Walker did not see a gun in Compton's hands, and Compton did not make any threats. Defendant shot Compton twice, killing him. Defendant, with the help of two other people who lived in the home, hid Compton's body in another room until that night, at which point he wrapped Compton's body in garbage bags and an electric cord. Defendant drove to Belle Isle and left Compton's body in the river. Defendant left to Florida approximately two weeks later.

Compton's body was found and, while investigating, officers received an anonymous tip about where Compton was killed and people who were potentially involved, including Walker and defendant. Detective Jennifer Carlson, of the Detroit Police Department, located Walker's home and learned about a narcotics raid that had happened there in December 2020 and involved

defendant. Detective Carlson learned defendant's phone number from that case and subsequently obtained his phone records. Cortanee Stieg, of the Detroit Police Department, did a forensic analysis and tower mapping of defendant's cell phone, and, among other information, learned that defendant called Walker on the night of the murder from the Belle Isle area. Further, defendant had been in the area of Walker's home before and after the time of the murder. Defendant was arrested and returned to Michigan.

During pretrial proceedings, the prosecutor moved to admit other-acts evidence involving the December 2020 drug raid, arguing that defendant's presence at the house during that time connected defendant to the house and Walker, while also providing police with defendant's cell phone number. The trial court granted the motion on these grounds. The trial court ordered that the evidence not be used to demonstrate that defendant was a drug dealer and noted that it would "issue an appropriate limiting instruction."

During a pretrial hearing, the prosecutor offered to reduce the first-degree murder charge if defendant pleaded guilty to second-degree murder and one count of felony-firearm second offense. The prosecutor would agree to a sentence of 10 to 30 years in prison for the second-degree murder conviction, consecutive to five years in prison for the felony-firearm conviction. The prosecutor noted that the original sentencing guidelines provided for a minimum of 315 months to 1050 months in prison. Defendant stated that he understood the offer, but he "did not do the crime" and wanted to proceed to trial because he was innocent. Defendant confirmed that he understood the sentencing guidelines and the potential for life in prison if he was convicted of first-degree murder. Defendant acknowledged that he had heard the offer and discussed the risks and benefits of it with defense counsel. The matter went to trial.

During trial, defense counsel argued that the other-acts evidence had gone beyond its purpose of connecting defendant to his phone number and Walker's house. The trial court noted that it would not have an issue with providing an instruction about the purpose of the other-acts evidence, to which defense counsel did not specifically respond. The prosecutor argued that the evidence corroborated Walker's testimony after defense counsel attacked her credibility. The trial court did not give a limiting instruction.

Later in the trial, the trial court informed defendant about his right to remain silent and his right to testify. Defendant indicated that he understood his rights, had discussed those rights with his attorney, and was choosing not to testify. Defense counsel requested a self-defense instruction, to which the prosecutor did not object. The trial court reviewed the instructions with the attorneys off the record, and defense counsel subsequently expressed satisfaction with the instructions. Defendant, however, started to speak, and defense counsel informed the trial court that defendant did not want to raise the issue of self-defense because it would indicate that defendant was present when the crime occurred. Defendant told the trial court that he was at the home the night before the murder, but he had left and was not there the morning of the murder. Defendant stated that he did not want the self-defense instruction because he did not kill Compton. The trial court gave defendant time to speak with defense counsel, and defendant confirmed that he did not want the self-defense instruction given.

During final jury instructions, the trial court explained that the jury "should only accept the things the lawyers say that are supported by the evidence or by your own common sense and

general knowledge." Further, "When a lawyer agrees on a statement of facts these are called stipulated facts. You may regard such stipulated facts as true but you are required to do so." The parties had stipulated to the fact that defendant had a prior felony that made him ineligible to carry a firearm.

After the jury was dismissed, the trial court stated that it had noticed some typographical errors in the instructions. Defendant interjected, stating that he had thought that he was going to get on the stand, which was why he wanted to remove the self-defense instruction, but, since he did not testify, requested that the trial court give the self-defense instruction. The trial court said it had questioned defendant about his decision to waive his right to testify. Defendant responded that he was "good," but he had been confused. The trial court explained that it was going to correct the errors in the instructions and then show the attorneys.

The jury subsequently found defendant guilty of second-degree murder, felon-in-possession, and one count of felony-firearm related to the felon-in-possession charge, but not guilty of a second count of felony-firearm associated with murder. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12(1)(a), to concurrent terms of 75 to 100 years in prison for second-degree murder and 25 to 50 years in prison for felon-in-possession, and to five years in prison for felony-firearm, to be served consecutive to his felon-in-possession sentence.

Defendant now appeals. Following his claim of appeal, defendant also moved for a new trial and resentencing, which the trial court denied.

## II. ANALYSIS

## A. PRIOR BAD ACTS

First, defendant argues that he is entitled to a new trial because the trial court improperly admitted evidence of his prior bad acts. We review for an abuse of discretion a trial court's decision regarding the admissibility of other-acts evidence. *People v Dobek*, 274 Mich App 58, 84-85; 732 NW2d 546 (2007). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Maye*, 343 Mich App 57, 65; 996 NW2d 571 (2022). Decisions regarding the admissibility of evidence often involve preliminary questions of law, which this Court reviews de novo. *Dobek*, 274 Mich App at 85.

"MRE 404(b) prohibits the admission of a defendant's other bad acts as character evidence to prove the defendant's mere propensity to commit the charged crime." *People v Muniz*, 343 Mich App 437, 460; 997 NW2d 325 (2022). Accordingly, a prosecutor must offer the evidence for a reason other than to demonstrate the defendant's character. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Further, the evidence must be relevant, and the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *Id.* The trial court may, if requested, provide a limiting instruction regarding the evidence. *Id.*

In this case, the prosecutor moved to admit the evidence about the earlier drug case to show defendant's connection to the scene of the murder and to Walker. Further, the evidence demonstrated how police confirmed defendant's phone number, linked to the scene of the murder and where Compton's body was found. Although the prosecutor referred to drug use in the home,

he did not refer to defendant as a drug dealer or suggest that he had the propensity to commit crimes. The prosecutor, therefore, admitted the evidence for reasons other than to demonstrate character or propensity.

The evidence was also relevant. Evidence is relevant if it has a tendency to make the existence of any fact of consequence more or less probable. MRE 401. The evidence showed defendant's connection to Walker, the house, and his cell phone number, which provided investigators with his locations around the time of the murder.

Further, the probative value of the evidence was not substantially outweighed by unfair prejudice. See MRE 403. To determine this, a court should consider the time required "to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact." *People v Sharpe*, 502 Mich 313, 331-332; 918 NW2d 504 (2018). All relevant evidence is "prejudicial" to an extent, but the fear of prejudice alone does not generally render evidence inadmissible. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). "[E]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017).

In this case, the other-acts evidence regarding the previous drug case was not *unfairly* prejudicial. The probative value of defendant's connection to Walker, the home, and his cell phone number was high. The evidence did not refer to defendant as a drug dealer or someone who engaged in criminal activity, and it was not needlessly cumulative, nor did it mislead the jury. See *Sharpe*, 502 Mich at 331.

Finally, although the trial court stated before trial that it would provide a limiting instruction, it did not. Defense counsel did not, however, request a limiting instruction and, after the trial court failed to give one, expressed no objection to the jury instructions. Regardless, the prosecutor did not argue at trial that the previous case showed defendant's guilt because of his character or any other improper purpose. Given the circumstances of this case, and the proper reason for admitting the evidence, the trial court did not abuse its discretion by admitting the other-acts evidence.

## B. JURY INSTRUCTIONS

Next, defendant argues that he is entitled to a new trial because the trial court failed to properly instruct the jury. Defendant did not, however, challenge the jury instructions in the trial court. To preserve a challenge to the trial court's jury instructions, a party must object to or request an instruction before the trial court. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). A challenge to a jury instruction is considered waived when defense counsel expressly states that defendant has no objections to the instructions. *People v Matuszak*, 263 Mich App 42, 57; 687 NW2d 342 (2004).

Here, defense counsel stated that he had no objections to the jury instructions. Defense counsel's express approval of the trial court's instructions constitutes a waiver that "extinguishes any error, leaving nothing for this Court to review." *People v Miller*, 326 Mich App 719, 726; 929

-4-

NW2d 821 (2019). Accordingly, this issue is waived. Moreover, defendant explicitly requested that the trial court not give the self-defense instructions. Defendant "created the very error that [he] wishes to correct on appeal." *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010). Therefore, we decline to address this issue on appeal.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he is entitled to a new trial because defense counsel was ineffective. Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). When an evidentiary hearing has not been held on the issue, our "review is limited to errors apparent on the record." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

To establish a claim of ineffective assistance of counsel, defendant must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance was deficient if it fell below an objective standard of professional reasonableness. *Jordan*, 275 Mich App at 667. Defendant bears a heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Performance prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667.

Defendant argues that defense counsel was ineffective because defendant would have accepted the plea offer if defense counsel had not told defendant that they would succeed at trial. Defendants are entitled to effective assistance of counsel during the plea-bargaining process. *People v Douglas*, 496 Mich 557, 593-594; 852 NW2d 587 (2014). Defense counsel's obligation during plea negotiations is to provide assistance that is sufficient to allow "the defendant to make an informed and voluntary choice between trial and a guilty plea." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995).

The record demonstrates that defendant informed the trial court that he wanted to proceed to trial after discussing the plea offer, including its risks and benefits, with defense counsel. Defendant was convicted of the same second-degree murder charge that was offered, although he was offered a sentencing agreement. Defendant now claims that defense counsel told him not to take the offer because they would succeed at trial, but the trial court's questioning of defendant at the pretrial hearing demonstrates that defendant was fully informed about the plea offer and its risks. Further, defendant has repeatedly claimed his innocence, rather than evidencing a likelihood that he would have pleaded guilty. Defendant has not, therefore, established that defense counsel's performance was deficient or prejudiced him in this regard.

Defendant additionally argues that defense counsel was ineffective because of instructional errors. We consider jury instructions in their entirety to determine whether an error requires reversal. *People v Alter*, 255 Mich App 194, 203 n 2; 659 NW2d 667 (2003). "Even if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights." *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020) (cleaned up).

The trial court instructed the jury that it "may regard such stipulated facts as true but you are required to do so." The correct stipulation instruction states, "You may regard such stipulated facts as true, but you are *not* required to do so." M Crim JI 4.7 (emphasis added). The trial court acknowledged that the instructions included some typographical errors and indicated that it would send corrected instructions to the jury, so it is not clear what more defense counsel could have done.

Even assuming that defense counsel should have caught the missing "not," defendant has not demonstrated prejudice. The parties merely stipulated to the fact that defendant had a prior conviction that made him ineligible to possess a firearm, and there is no basis to find that the jury would have found defendant not guilty of any of the crimes had the trial court originally given the correct instruction.

Further, defendant argues that defense counsel should have insisted that the self-defense instruction be given. As discussed earlier, defense counsel requested a self-defense instruction, but defendant indicated that he did not want the trial court to give it. Having created the alleged error, defendant cannot now use it as an "appellate parachute." *Szalma*, 487 Mich at 726. Regardless, defendant has not shown that defense counsel was deficient or that any error prejudiced him when defendant has repeatedly claimed to have not committed the offense.

Defendant additionally argues that, although defense counsel objected to the other-acts evidence before trial, defense counsel failed to object to the introduction of evidence at trial and failed to ensure that the limiting instruction was given. Defense counsel argued after the second day of trial, however, that the other-acts evidence went beyond the intended purpose. Because the other-acts evidence was properly admitted, further objections at trial would have been futile. "Failing to advance a meritless argument or a raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, defense counsel's performance was not deficient in this regard.

As to the limiting instruction, the prosecutor argues on appeal that it may have been a matter of trial strategy for defense counsel not to want to draw attention to the other-acts evidence. See *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). Whether or not this was a matter of trial strategy, defendant has not demonstrated that he was prejudiced by the lack of a limiting instruction. The prosecutor did not unduly rely on the circumstances of the other-acts evidence or argue about defendant's character. Therefore, defendant was not denied effective assistance of counsel.

## D. SENTENCING

Finally, defendant argues that he is entitled to resentencing because his within-guidelines sentence was disproportionate given his age. We review for an abuse of discretion a trial court's sentencing decisions. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023).

Although sentencing guidelines are no longer mandatory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). Proportionality is determined "according to the offense and the offender, not according to the sentence's relationship to the guidelines." *Posey*, 512 Mich at 356. There is a presumption that a within-guidelines sentence is proportionate, although this presumption may be overcome. *Id*. at 360. The defendant bears the burden of demonstrating that a within-guidelines sentence is unreasonable. *Id*. at 359. Considerations relevant for determining an appropriate sentence include the seriousness of the offense and factors that the guidelines do not consider or adequately consider. *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019). Specifically, factors for which the guidelines do not adequately account may include "the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Id*. (cleaned up).

Defendant argues that his sentence for second-degree murder is a "de facto life sentence." The prosecutor relies on *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 5, in which the defendant argued that the minimum sentence was equivalent to a death sentence. This Court explained that the defendant was not sentenced to life in prison and that the seriousness of the offense was not lessened by the defendant's age. *Id*. "[A] defendant's age is insufficient to overcome the presumption of proportionality, especially when considered in light of a defendant's criminal record and the gravity of his offenses." *Id*. at ___; slip op at 5-6.

Here, defendant had an extensive criminal history and was sentenced as a fourth-offense habitual offender. Defendant has not expressed remorse for shooting Compton, hiding his body, and disposing of it in the Detroit River before fleeing the state. As in *Purdle*, ___ Mich App at ___; slip op at 7, defendant's age did not render his sentence disproportionate, considering the seriousness of the offenses, his criminal history, and his lack of remorse.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman